UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
          v.                  )      Criminal No. 04-40026-FDS
                              )
BRIAN VALLEE,                 )
                              )
          Defendant.          )

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY OF ANY NOTES TAKEN DURING INTERVIEWS WITH DEFENDANT

The government files this memorandum of law in opposition to
Defendant's motion for additional discovery.  Defendant seeks any
and all notes, rough, fragmented or otherwise, taken by agents of
the Bureau of Alcohol, Tobacco and Firearms ("ATF") during
interviews of Defendant that occurred on August 26, 2003, September
24, 2003 and October 27, 2003.  Each interview is the subject of a
report prepared by an ATF agent who was present at the interview.
In turn, each report contains the substance of the information
provided by Vallee during the interviews.  These reports have been
produced to Defendant.  Such production satisfies the government's
Rule 16 obligation, and the motion for additional discovery should
be denied.

### ARGUMENT

Defendant moves for production of the agents' notes of the
interviews pursuant to Rule 16(B)(ii), which in relevant part
requires the government to produce:

    the portion of any written record containing the
    substance of any relevant oral statement made before or

1

> after arrest if the defendant made the statement in
> response to interrogation by a person the defendant knew
> was a government agent.

Fed. R. Crim. P. 16(B)(ii).

This Court considered an identical motion in <u>United States v.</u> <u>Rizzuti</u>, 03-40023-NMG (April 7, 2004), and found that "[g]iven the purpose of Rule 16," agents' notes taken during an interview of a defendant must be produced only if, among other things, "such notes set forth verbatim the substance of the oral statements." <u>Id</u>. at 2-3.    The Court then found that the agents' notes were not discoverable because they were not verbatim accounts of the agents' interview with Rizzuti. <u>Id</u>.

The Court should follow its prior interpretation of the scope of Rule 16(B)(ii), and apply here the same criteria for determining whether agents' notes of interviews with Vallee are discoverable. We submit herewith the ATF reports of the interviews, and submit under seal the agent's notes taken during such interviews.  As a review of these materials shows, the notes of the ATF agent are not even close to verbatim accounts of what Vallee said during the interviews, and hence are not discoverable under the Rule. Moreover, a comparison of the two shows that the notes, while not verbatim, contain enough information to establish that the reports (produced to Defendant) accurately reflect the notes.

In asking this Court to grant this motion and effectively reverse its decision in <u>Rizzuti</u>, Defendant relies principally upon

2

a passage from the Advisory Notes to the 1991 amendment of Rule 16:

> The written record need not be a transcription or summary of the defendant's statement but must only be some written reference which would provide some means for the prosecution and defense to identify the statement.

Defendant's selection ignores the entire first paragraph of the Advisory Notes which explains the purpose of the amendment, and which explanation shows that this Court correctly interpreted the Rule in Rizzuti. That paragraph makes clear that the Rule was amended so that a defendant could discover any statement he or she gave, "without regard to whether the prosecution intends to use the statement at trial." See Rule 16, Advisory Committee Notes, 1991 Amendment.

> The change recognizes that the defendant has some proprietary interest in statements made during interrogation regardless of the prosecution's intent to make any use of the statements.

Id. Hence, the objective of the amendment was not to force production of an agent's fragmented notations or scattered jottings made during an interview of a defendant. Rather, it was to insure that a defendant receive a written record of the substance of any statement he or she made, whether or not the government intended to offer it at trial. Where, as here, the government has produced reports setting forth the substance of a defendant's statement, the defendant's proprietary interest in his statement has been vindicated, and the purpose of the amendment - to provide a defendant with his statements regardless of how the government may

3

wish to use the statement - has been achieved.   It is hard to imagine how, in these circumstances, production of the notes would further the Rule's purpose.[1]

Defendant also relies upon a contrary interpretation reached by Magistrate Judge Collings in United States v. Almohandis, 307 F.Supp.2d 253 (D.Mass. 2004).   Judge Collings found that Rule 16(B)(ii) required production of any notes taken by an agent during an interview of a defendant, reasoning that "[t]he rule requires production of 'any written record of the substance of any relevant oral statement . . .'.  The notes are 'a' written record.  They may not be the only written record, but they certainly are 'a' written record."   We respectfully submit that Judge Collings erred.   In requiring production of all agents' notes, Judge Collings read the word "substance" out of the Rule itself, and chose instead to rely exclusively on the Advisory Committee Notes: "In the instant case, the rough notes surely contain a 'reference to a relevant oral statement' and, as such, are a 'written record' required to be disclosed.  Id. at 256 quoting Advisory Committee Notes.  Thus, under his interpretation, an agent's notes would become the "substance" of a defendant's statement, regardless of how abbreviated, cryptic or fragmented the notes were -- indeed, regardless of the extent to which the notes did not contain the

---

[1]For this reason, we believe that this Court correctly required production of notes only when the notes are contain a verbatim account of a defendant's statement.

substance of a defendant's statement. Such an interpretation fails
to serve the language and purpose of the Rule.

Moreover, we note that the first line of the Advisory Notes
makes clear that the amendment was intended to "expand slightly"
the government's discovery obligation.    Notwithstanding the
Committee's characterization of what it intended, Judge Collings'
interpretation, given that it would require production of virtually
all interview notes, works not a "slight" expansion - as the
Committee intended -- but a far-reaching and revolutionary change
in discovery practice.

Finally, Judge Collings' interpretation would substantially
undermine Rule 16(2).    That Rule exempts "from discovery or
inspection [] reports, memoranda, or other internal government
documents made by an attorney for the government or other
government agent in connection with investigating or prosecuting
the case."   The notes, by their nature, are "internal government
documents" not subject to production.    Judge Collings'
interpretation dramatically reduces Rule 16's protection of agents
work-product.   Indeed, the Committee would not have characterized
the amendment as a "slight" expansion, if its intent was to change
the protections of another federal rule.

Judge Collings' decision aside, since the enactment of the
1991 Amendments to Rule 16, other courts confirmed that the
government's obligation to disclose written records of the

substance of a defendant's oral statements under Rule 16(a)(1)(A) is satisfied by the production of an agent's typewritten report and that the government is not obligated to provide Defendant with copies of the notes the agent relied upon to prepare the report. See United States v. Myers, No. 97-CR-140 (RSP/GJD), 1997 WL 797507, at *3 (N.D.N.Y. Dec. 24, 1997) (defendant not entitled under Rule 16(a)(1)(A) to discovery of notes of government agents made during interrogation of defendant); United States v. Mango, No. 96-CR-327, 1997 WL 222367, at *22 (N.D.N.Y. May 1, 1997) (in order to comply with Rule 16, government only needs to provide defendant with typewritten memoranda of interviews prepared from agent's handwritten notes); United States v. Walker, 922 F. Supp. 732, 744 (N.D.N.Y. 1996) ("In order to fully comply with Rule 16, the government only needs to provide the defendant with the typewritten memoranda of interviews prepared from the agent's handwritten notes").

The Seventh Circuit has also held that a defendant could not compel the government to produce an agent's rough interview notes that were subsequently incorporated into a final typewritten report, even after a testifying witness relied upon the typewritten report to refresh her recollection at trial. United States v. Muhammed, 120 F.3d 688, 699 (7th Cir. 1997). The court went on to state that a defendant "is not entitled to an agent's notes if the agent's report contains all that was in the original notes." Id.

6

Although the Seventh Circuit did not specifically address Rule 16, it clearly stated that there was "no legal basis" for compelling the production of the notes. Id. But see United States v. Molina-Guevara, 96 F.3d 698, 705 (3d Cir. 1996) (reversing on other grounds, but noting that government had conceded that production of agent's handwritten notes of interview with defendant was required under Fed. R. Crim. P. 16 and noting that notes would be produced on remand).

While the government acknowledges that United States v. Griggs, 111 F.Supp 2d 551 (D. Md. 2000), cited by Defendant, held that rough notes taken by a federal agent of an interview with the defendant were discoverable, a careful reading of Griggs shows that the holding was animated in part by concerns that the notes might contain Brady material. See Griggs, 111 F.Supp.2d at 554 ("the notes are a matter of considerable importance to a defendant, given the potential (actually likelihood) that they constitute, or a least contain Brady material.").

Finally, the Local Rules suggest that this Court's interpretation of Rule 16 in Rizzuti, and not the contrary decisions discussed herein, is correct. Local Rule 116.9(A) requires preservation of agents' notes. However, Local Rule 116.9 contains no requirement for the discovery of such notes. The Local Rules were adopted on September 8, 1998, seven years after Rule 16 was amended. See Local Rule 118.1. The Local Rules Committee,

7

cognizant of the change in Rule 16, could have adopted an exception requiring the disclosure of those notes which were made at that the time of a Defendant's statement to known law enforcement officers. Significantly, the Rule has not been so written.

### CONCLUSION

Based on the forgoing, the motion for discovery of notes taken during interviews of Defendant should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: _David Hennessy_

David Hennessy
Assistant U.S. Attorney

Dated: April 19, 2005

### CERTIFICATE OF SERVICE

I, David Hennessy, Assistant U.S. Attorney, do hereby certify that I have this 19th day of April, 2005, served the copy of the foregoing by U.S. Mail on Miriam R. Conrad, Esq., Federal Defender Office, 408 Atlantic Avenue, 3rd Fl., Boston, MA 02210.

_David Hennessy_

David Hennessy
Assistant U.S. Attorney

8

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## REPORT OF INVESTIGATION

Page 1 of 2

| ADDRESSED TO: | MONITORED INVESTIGATION INFORMATION: |
|---|---|
| Special Agent in Charge<br>Boston Field Division | Boston Field Division<br>FY-04<br>Report 087 |

| TITLE OF INVESTIGATION: |  |
|---|---|
| CASE NUMBER: | REPORT NUMBER:<br>87 |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
|  | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)*<br>Michael P. Curran | SUBMITTED BY *(Title and Office)*<br>Special Agent, Worcester Field Office | SUBMITTED BY *(Date)*<br>12/02/2003 |
|---|---|---|
| REVIEWED BY *(Name)*<br>Jane E. Heffner | REVIEWED BY *(Title and Office)*<br>Resident Agent in Charge, Worcester Field Office | REVIEWED BY *(Date)*<br>12-3-03 |
| APPROVED BY *(Name)*<br>William J. Hoover | APPROVED BY *(Title and Office)*<br>Special Agent in Charge, Boston Field Division | APPROVED BY *(Date)*<br>12-3-03 |

**DESCRIPTION OF ACTIVITY:**
Interview of Brian VALLEE

**SYNOPSIS:**
On October 27, 2003, Special Agents Michael Curran and Eric Kotchian interviewed Brain VALLEE, date of birth July 28, 1983, social security number 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, in Southbridge, MA.

**NARRATIVE:**
1) On October 27, 2003, S/As Curran and Kotchian were traveling in a government owned vehicle (GOV) on Main Street in Southbridge, MA. While driving by Save-More gas station located at 39 Main Street in Southbridge, S/A Curran observed Brian "Chunky" VALLEE in the parking lot. S/As Curran and Kotchian pulled their GOV into the parking lot of Save-More and engaged VALLEE in a conversation.

2) VALLEE told investigators that he was in the parking lot meeting two friends, Jen and Paula, who were with a third female. VALLEE indicated that Paula was the sister of one of his friends, and Jen was his friend's girlfriend. VALLEE stated that he was unsure of the third female's identity, but looked at the car occupied by the three females, a blue Mercedes, and told investigators that he thought she had a nice car.

3) VALLEE was asked about his friend Ivan RAMOS who was recently arrested for cocaine possession. VALLEE stated that he wasn't with RAMOS that day. VALLEE was also asked about the sawed-off shotgun he previously told investigators that he had thrown into the Dudley Paper Mill Dam in Dudley, MA, partially in plastic grocery bags. VALLEE admitted that he weighed the plastic grocery bags down with

ATF EF 3120.2 (5-98)

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## REPORT OF INVESTIGATION

Page 2 of 2

| ADDRESSED TO: Special Agent in Charge Boston Field Division | MONITORED INVESTIGATION INFORMATION: Boston Field Division FY-04 Report 087 |
|---|---|

TITLE OF INVESTIGATION:

| CASE NUMBER: | REPORT NUMBER: 87 |
|---|---|

rocks to make sure that they would sink, because some gun parts in these bags were not metal and would have floated.

4) VALLEE stated that he didn't want to keep his friends waiting any longer, and entered the back seat of the Blue Mercedes, bearing Massachusetts registration 74EK05.

5) Investigators discovered that the Blue Mercedes, registration 74EK05, is registered to Richard Munger of 380 Brimfield Road in Warren, MA 01083. S/As Curran and Kotchian later interviewed Jennifer MUNGER at that address. A Southbridge Police report is attached regarding MUNGER.

## ATTACHMENTS:
1) Southbridge Police Department incident report dated 11/15/03

DEPA   ENT OF THE TREASURY
BUREAU OF AL   OHOL, TOBACCO AND FIREARMS
**REPORT OF INVESTIGATION**

Page 1 of 2

| ADDRESSED TO: | MONITORED INVESTIGATION INFORMATION: |
|---|---|
| Special Agent in Charge<br>Boston Field Division | Boston Field Division<br>FY-03<br>Report 049 |

| TITLE OF INVESTIGATION: | |
|---|---|
| CASE NUMBER: | REPORT NUMBER:<br>48 |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| | | | |
|---|---|---|---|
| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)*<br>Eric M. Kotchian | SUBMITTED BY *(Title and Office)*<br>Special Agent, Worcester Field Office | SUBMITTED BY *(Date)*<br>09/22/2003 |
|---|---|---|
| REVIEWED BY *(Name)*<br>Jane E. Heffner | REVIEWED BY *(Title and Office)*<br>Resident Agent in Charge, Worcester Field Office | REVIEWED BY *(Date)*<br>9/22/03 |
| APPROVED BY *(Name)*<br>William J. Hoover | APPROVED BY *(Title and Office)*<br>Special Agent in Charge, Boston Field Division | APPROVED BY *(Date)* |

**DESCRIPTION OF ACTIVITY:**
Interview of Brian "Chunky" VALLEE

**SYNOPSIS:**
On August 26, 2003, ATF Special Agent Eric Kotchian, ATF Special Agent Michael Curran, and Southbridge (MA) Detective Shane Woodson interviewed Brian "Chunky" VALLEE (DOB: 07-28-1983  SSN: 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) on the front porch to his residence, which is located at 49 Chestnut Street, 3rd Floor in Southbridge, MA.

**NARRATIVE:**

1.  On August 26, 2003, ATF Special Agent Eric Kotchian, ATF Special Agent Michael Curran, and Southbridge (MA) Detective Shane Woodson interviewed Brian "Chunky" VALLEE on the front porch to his residence, which is located at 49 Chestnut Street, 3rd Floor in Southbridge, MA. VALLEE provided the following information:

2.  VALLEE is friendly with Ivan RAMOS, Christopher POWER, and David WHITE, JR.

3.  VALLEE admitted to possessing a sawed-off shotgun sometime in 2003. VALLEE also admitted that he had recently disposed of the sawed-of shotgun by throwing it into a body of water.

4.  VALLEE provided investigators with the following details, about the disposal of the sawed-off shotgun: Prior to throwing the sawed-off shotgun into the water, VALLEE cut the sawed-off shotgun into pieces. Sometime after VALLEE cut the sawed-off shotgun into pieces, he transported the pieces of the sawed-off

| DEPARTMENT OF THE TREASURY<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>REPORT OF INVESTIGATION | Page 2 of 2 |
|---|---|

| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-03<br>Report 049 |
|---|---|

| TITLE OF INVESTIGATION: | |
|---|---|

| CASE NUMBER: | REPORT NUMBER:<br>48 |
|---|---|

shotgun to a location near a pond, which is in the vicinity of the Dudley Paper Mill Dam and is located in Southbridge, MA. According to VALLEE, he threw the pieces of the sawed-off shotgun into the pond in a white, plastic grocery bag and the others were thrown into the pond separate from those in the white, plastic grocery bag. VALLEE led investigators to the pond, showed investigators the area from which he threw the pieces of the sawed-off shotgun into the pond, demonstrated the manner in which he threw the pieces of the sawed-off shotgun into the pond, and pointed out the area where the pieces of the sawed-off shotgun entered the pond.

5. VALLEE admitted that he knew it was illegal for him to possess a sawed-off shotgun.

6. VALLEE would not refer to RAMOS by name, but referred to him as "the guy, who lives on Charlton Street". (RAMOS resides at 116 Charlton Street, 1st Floor Rear in Southbridge, MA.)

7. VALLEE refused to cooperate any further with investigators, regarding the sawed-off shotgun.

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**REPORT OF INVESTIGATION**

| ADDRESSED TO: | MONITORED INVESTIGATION INFORMATION: |
|---|---|
| Special Agent in Charge<br>Boston Field Division | Boston Field Division<br>FY-04<br>Report 078 |

**TITLE OF INVESTIGATION:**

| CASE NUMBER: | REPORT NUMBER: |
|---|---|
|  | 78 |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| | | | |
|---|---|---|---|
| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)* | SUBMITTED BY *(Title and Office)* | SUBMITTED BY *(Date)* |
|---|---|---|
| Eric M. Kotchian | Special Agent, Worcester Field Office | 11/18/2003 |
| **REVIEWED BY** *(Name)*<br>Jane E. Heffner | **REVIEWED BY** *(Title and Office)*<br>Resident Agent in Charge, Worcester Field Office | **REVIEWED BY** *(Date)*<br>11-21-03 |
| **APPROVED BY** *(Name)*<br>William J. Hoover | **APPROVED BY** *(Title and Office)*<br>Special Agent in Charge, Boston Field Division | **APPROVED BY** *(Date)*<br>11-21-03 |

**DESCRIPTION OF ACTIVITY:**
Interview of Ivan RAMOS and Brian "Chunky" VALLEE

**SYNOPSIS:**
On September 24, 2003, ATF Special Agents Eric Kotchian and Michael Curran interviewed Ivan RAMOS (DOB: SSN:) and Brian "Chunky" VALLEE (DOB:  SSN:) at RAMOS' residence, which is located at 116 Charlton Street 1st Floor Rear in Southbridge, MA. The interview took place while RAMOS and VALLEE were on the rear porch to RAMOS' residence.

**NARRATIVE:**

1. On September 24, 2003, ATF Special Agents Eric Kotchian and Michael Curran interviewed Ivan RAMOS and Brian "Chunky" VALLEE at RAMOS' residence, which is located at 116 Charlton Street 1st Floor Rear in Southbridge, MA. The interview occurred because RAMOS invited S/As Kotchian and Curran to come over to the rear porch area of his residence, because he and VALLEE wanted to talk to the S/As. RAMOS and VALLEE were outside of RAMOS' residence on a rear porch. At the time that RAMOS had invited the S/As to come over to talk, the S/As were taking photographs of an abandoned camper that was adjacent to the parking lot of the building that houses RAMOS' residence. The photographs of the camper were being taken because the S/As had received information that RAMOS and VALLEE had fired rounds from a sawed-off shotgun into the camper.

2. As RAMOS was talking to the S/As, he provided the following information:

ATF EF 3120.2 (5-98)

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## REPORT OF INVESTIGATION

Page 2 of 2

| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-04<br>Report 078 |
|---|---|
| TITLE OF INVESTIGATION: ████████████ | |
| CASE NUMBER: ████████████ | REPORT NUMBER:<br>78 |

Substance of Ramos'
Statements — pp 3 - 10 —
Redacted

11. As VALLEE was talking to the S/As, he provided the following information:

12. WHITE sold VALLEE a shotgun for $150.00.  According to VALLEE, WHITE stole the shotgun from somewhere in Brookfield, MA.  VALLEE witnessed the same shotgun being sawed down by WHITE and a Puerto Rican male in the wooded area behind RAMOS' residence.

13. VALLEE admitted to possessing the sawed-off shotgun for a period of time.  VALLEE stated that he possessed the sawed-off shotgun for protection.